**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
LOCAL 827 INTERNATIONAL                 :
BROTHERHOOD OF ELECTRICAL_____          :
WORKERS AFL-CIO                         :
                                        :
            Plaintiff,                  :        Civil Action No. 03-3523 (lead case)
                                        :                          03-3613
                                        :                          03-6097
        v.                              :
                                        :        **OPINION**
                                        :
VERIZON NEW JERSEY, INC. and            :
VERIZON SERVICES CORPORATION            :
                                        :
            Defendants.                 :
_____:

**KATHARINE S. HAYDEN, U.S.D.J.**

This lawsuit consists of three consolidated cases brought by Local 827 International

Brotherhood of Electrical Workers AFL-CIO ("plaintiff") against Verizon New Jersey, Inc. and

Verizon Services Corporation (collectively "defendants" or the "Company")[1] to compel

arbitration of three  grievances.  Pending before the Court are the parties' cross-motions for

summary judgment.  For the reasons that follow, the Court denies defendants' motion and grants

plaintiff's motion.

**I.      BACKGROUND**

Plaintiff is an unincorporated association and labor organization representing defendants'

non-supervisory employees with respect to collective bargaining for rates of pay, wages, hours of

_____

[1] Defendants used to be known as New Jersey Bell Telephone Company.

employment and other conditions of employment.  (Pl. Moving Br. at 2.)  The parties are subject

to a Collective Bargaining Agreement ("CBA"), which contains both an "Accounting Contract"

for the Organization of Vice President and Comptroller and General Departments and a "Plant

Contract" for the Plant and Engineering Departments.  Id. at 3.  The three grievances brought by

plaintiff fall under the Plant Contract, attached to the Sokol Declaration at Exhibit E.

**Pertinent Collective Bargaining Agreement Provisions**

> Article XII, Arbitration, lists matters which are subject to arbitration.  Articles XII states:
>
> Section 1.  ***Only the matters specifically made subject to arbitration*** in Article VII, Force
> Adjustments and Termination Allowances, Section 4, paragraph 4;
> Article VIII, Separations from the Services – Other Than Layoffs, Section 2;
> Article X, Interpretation and Performance, Section 2;
> ***Article XI, Grievance Procedure, Section 4***;
> Article XV, Changes in the Verizon Pension Plan and the Sickness and Accident
> Disability Benefit Plan, Section 3;
> Article XVI, Seniority in Promotions, Section 4; and Article XXII, Verizon Services
> Transfer Plan and Intercompany Job Bank Program; ***shall be arbitrated***.
> . . .
>
> Section 2.  ***The Board of Arbitration*** in its decision shall be bound by the provisions of
> this Agreement and ***shall not have the power to add to, subtract from, or modify any
> provision of this Agreement.***
>
> Section 3.  The Procedure for Arbitration is set forth in Exhibit III attached to and made
> part of this Agreement.

(emphasis added).

> Article XI of the CBA establishes a three-step grievance procedure and section 4

specifically sets forth the procedure for the top step of the grievance procedure.  Article XII lists

Article XI, Grievance Procedure, Section 4 as subject to arbitration.  Article XI, Grievance

Procedure, Section 4 states:

> Section 4.  If any grievance involving a controversy over the true intent and meaning or
> the application, in any particular instance, of any provision of this Agreement, is not

satisfactorily adjusted under the provisions of Sections 1 and 2 above, the Union's written notice to the Director-Labor Relations appealing the grievance specified in Section 3 above shall identify, by Article and Section, the particular provision(s) of the Agreement at issue.

Article XI, Section 4, cites Article XI, Section 3, which sets forth the procedure when a grievance is not resolved at the first or second step of the grievance procedure. Article XI, Section 3 provides:

Section 3. If the grievance is not satisfactorily adjusted under the provisions of Sections 1 and 2 above, the Union may appeal the grievance by written notice, which notice shall not set forth the Union's position with respect to such grievance, to the Director-Labor Relations designated by the Company within fourteen (14) days after discussions have been concluded under Section 2 above. Conferences shall be held promptly between the Union and the Company representatives, or such other representatives as either party may select, in a further effort to reach a satisfactory adjustment of the grievance. Fourteen (14) days shall be allowed for adjustment of the grievance at this level. If a satisfactory adjustment is not reached, the Company, within fourteen (14) days after discussion have been concluded at this level, shall submit to the Union in writing a final statement of its position. The case shall then be considered closed unless the grievance is arbitrable and arbitration proceedings are initiated under the provisions of Article XII, Arbitration, within thirty (30) days after the period allowed for adjustment at this level.

**Grievances**

Plaintiff brought this motion to compel defendants to arbitrate three grievances relating to defendants' alleged improper assignment of overtime work.

Grievance One (01-00-0120) alleges that defendants violated the CBA and a related prior agreement[2] by improperly assigning overtime work involving Facilities Technicians in the Northern Suburban District. (Pl. Moving Br. at 6-7). Grievance Two (1-00-703) alleges that defendants violated the CBA by improperly assigning overtime work involving Repair Service

---

[2] This agreement, entitled "Declaration of Emergency Procedures," was the result of a settlement by the parties in another dispute. The agreement states certain procedures that the Company must follow in an "emergency." (Pl. Oppos. Br. at 23.)

3

Clerks in the Southern Suburban District.  Id. at 8-9.  Grievance Three (1-00-280) alleges that defendants violated the CBA by improperly assigning construction overtime work involving a Facilities Technician in the Southern Suburban District.  Id. at 9-11.

Plaintiff's position during the grievance procedure was that for over 25 years an overtime list was in existence tracking the hours worked by each employee, which was designed to serve as the basis for overtime assignments.  Id. at 12.  According to plaintiff, defendants were obligated to offer overtime first to those employees with the least amount of overtime.  Id. at 11.  During the grievance procedure, plaintiff alleged that when defendants failed to assign overtime pursuant to the overtime list, they violated Article II (Recognition and Collective Bargaining), the implied covenant of good faith and fair dealing, and past practices of the CBA.  Id. at 6-12.  Grievance One (01-00-0120) also alleged a violation of a side agreement.  Id. at 6.  In plaintiff's submissions to the Court, plaintiff also alleges violations of Articles IV (Working Conditions), V (Wages), and XI (Grievance Procedure).  Id. at 12.  The grievances were processed through the grievance procedure as outlined in Article XI of the CBA and the grievances were denied by defendants at each step of the process.  Id.  Plaintiff invoked arbitration pursuant to Article XII for all three grievances.  Id.  An Arbitrator was appointed in all three cases and the disputes were scheduled for hearings.  Id.  Years after the grievances arose, defendants notified plaintiff that they would not participate in the scheduled arbitrations because the grievances were not substantively arbitrable.  Id.  As a consequence, plaintiff filed three separate complaints (which were later consolidated) in federal court to compel arbitration of the three grievances.  Id. at 11.

## II.    STANDARD OF REVIEW

4

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the text of Rule 56 makes clear, inasmuch as the issue here involves a pure question of law – whether the particular disputes are arbitrable – this matter is appropriate for disposition by way of summary judgment. See Continental Ins. Co. v. Bodie, 682 F.2d 436, 439 (3d Cir. 1982); Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

## III.   SUBJECT MATTER JURISDICTION

As a threshold matter, the Court is satisfied that it has subject matter jurisdiction to entertain this action. The Supreme Court has stated that "unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986); Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 888 (3d Cir. 1992). But in determining whether the grievances are subject to arbitration, "the court is not to rule on the potential merits of the underlying claims." Trap Rock, 982 F.2d at 888 (quoting AT&T Technologies, 475 U.S. at 649). "Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular

5

claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." AT&T Technologies, 475 U.S. at 649-50 (quotations omitted).

## IV.    DISCUSSION

It is well settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Lukens Steel Co. v. United Steel Workers of Am., 989 F.2d 668, 672 (3d Cir. 1993) (quoting AT&T Technologies, 475 U.S. at 648); see also Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 208 (1991) ("Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to arbitrate the arbitrability question.") (citation omitted). But, when an arbitration clause exists, "a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," with doubts being resolved in favor of coverage. Lukens Steel Co., 989 F.2d at 672 (quoting AT&T Technologies, 475 U.S. at 650). To rebut this presumption, defendant must "either: (1) establish the existence of an express provision excluding [the] grievance from arbitration; or (2) provide the most forceful evidence of a purpose to exclude the claim from arbitration." Lukens Steel Co., 989 F.2d at 673 (internal quotations omitted). If the arbitration provisions are explicit and unambiguous, extrinsic evidence is not necessary. Id.; see Morristown Daily Record, Inc. v. Graphic Communications Union, 832 F.2d 31, 33 (3d Cir. 1987).

6

In E.M. Diagnostic Systems, Inc. v. Local 169, International Brotherhood of Teamsters, 812 F.2d 91 (3d Cir. 1987), the Third Circuit set forth a three prong inquiry to determine whether a CBA creates a duty to arbitrate a particular grievance: (1) whether the present dispute comes within the scope of the arbitration clause, (2) whether any other provision of the contract expressly excludes the specific kind of dispute from arbitration, and (3) whether there is any other "forceful evidence" indicating that the parties intended such an exclusion.  Id. at 95.

**Plaintiff's Position**

Plaintiff argues that the grievance and arbitration provisions of the CBA are explicit and unambiguously and unequivocally mandate the arbitration of the three grievances because Article XII, entitled "Arbitration," makes arbitrable any grievance that went through Article XI, Grievance Procedure, Section 4.  The within grievances were processed through Article XI, Section 4.

Article XI, Section 4 grievances are those that involve: "a controversy over the true intent and meaning or the application, in any particular instance, of any *provision* of this Agreement." (emphasis added).  According to plaintiff, "provisions" of the Agreement include: past practices, implied covenant of good faith and fair dealing, and each and every section of every article and exhibit of the agreement, including Article II (Recognition and Collective Bargaining)[3].  (Pl.

---

[3] Article II (Recognition and Collective Bargaining) of the CBA states:
Section 1.  The Union hereby affirms and certifies that it has, as members in good standing, a majority of the nonsupervisory employees in the Plan Department and Engineering Department of the Company.

Section 2.  The Company recognizes and acknowledges the Union as the designated and selected representative of the nonsupervisory employees of its Plant Department and Engineering Department for the purpose of collective bargaining and as their sole collective bargaining agency in respect to rates of pay, wages, hours of employment, and

Moving Br. at 33.)  In addition, plaintiff contends that a side agreement to the CBA is arbitrable when it relates to any provision of the CBA.[4]  Essentially, plaintiff's position is that grievances that are processed through the top step of the grievance procedure –  including those based on violations of oral agreements, written side agreements and past practices –  are arbitrable unless explicitly excluded.  (Pl. Moving Br. at 13.)

Plaintiff argues the overtime grievances at issue here, along with the provisions on recognition, working conditions, wages, and non-discrimination, come within the "zone of interests" that have received protection in the CBA.  (Pl. Moving Br. at 23-28.)  This argument relies on the "zone of interests" analysis articulated in E.M. Diagnostic, where the Third Circuit held that a grievance is within the scope of arbitration when the subject matter of the grievance

_____

other conditions of employment, and for the purpose of entering into understandings and agreements with references thereto; provided, however, that such recognition and acknowledgment shall not in any manner affect the right of individual employees, or groups of employees, to present grievances to the Company at any time and to have them adjusted in accordance with the requirements-of section 9(a) of the Labor Relations, 1947.

Section 3.  The parties agree to advise each other whenever possible of the names of individuals and their titles authorized to represent them at conferences to be held pursuant to the provisions of any Section of this Agreement or for the purpose of discussing any matter of mutual interest to both parties.

Section 4.  Wherever in this Agreement there is a provision for notice of any kind to be served by the one party upon the other, it is mutually agreed to be sufficient for this purpose when the Union sends its notice to the office of the Director-Labor Relations designated by the Company, or when the Company sends its notice to the office of Local 827, IBEW, AFL-CIO.

[4] Plaintiff cites several instances where specific arbitration exclusion clauses appear in provisions of the CBA and side agreements and uses these examples to attack defendants' position that the Company is not required to arbitrate a particular dispute unless the parties affirmatively and specifically state the dispute is arbitrable.  (See Pl. Reply Br. at 6-7.)

comes within the "zone of interests that have received protection in the collective bargaining agreement."  E.M. Diagnostic, 812 F.2d at 95.  Plaintiff points out that  the CBA language here is "virtually identical" to the language in dispute in <u>E.M. Diagnostic</u>.  (Pl. Reply Br. at 1.)  Plaintiff points out that "overtime" is specifically defined as a working condition in Exhibit 1 of the CBA and working conditions are specifically made part of the CBA in Article IV.[5]  <u>Id.</u>

In addition, plaintiff claims the overtime grievances involve violations of Article II, a provision in the CBA.  (Pl. Moving Br. at 31-32; Pl. Oppos. Br. at 12.)  Plaintiff argues that the overtime list has been a past practice for many years and defendants have acknowledged this practice both verbally and in writing.  (Pl. Moving Br. at 31.)  Plaintiff claims that the long-standing practice of the overtime list has become an integral part of the CBA – somewhat like an implied term of the CBA.  <u>Id.</u>  And past practices and the implied covenant of good faith and fair dealing are regarded by courts and arbitrators as "provisions" of a CBA even though not express

---

[5]  Exhibit I (titled "Working Conditions") of the CBA states:.

Section 1 -- General.  Working hours and daily schedules of employees will be arranged to fit the needs of the service.  Employees will be required to work overtime . . . when the necessities of the service demand such work.  In administering the requirement to work overtime, the Company will make a reasonable effort to excuse employees who have personal commitments.  This will not reduce the employee's obligation to work overtime when assigned.  However, an employee will be required to work no more than a total of ten (10) hours overtime in any payroll week during seven (7) calender months . . . [and] no more than a total of fifteen (15) hours overtime any payroll week during the remaining five (5) calendar months . . . except in case of emergency, long-term service difficulties or if the employee consents to such overtime . . . .  No provision of this Exhibit shall constitute a guaranty as to the minimum or maximum number of hours of work per week which may be required on the part of any employee.

Section 2 -- Definitions.  Overtime – Overtime is time worked in excess of the basic workweek or in excess of the basic workday, and, except on holidays, is paid for at time and one-half when the total time worked exceeds forty (40) hours per week or exceeds eight (8) hours per day.

written provisions.  (Pl. Oppos. Br. at 10-11, 17-21.)  Moreover, plaintiff argues there is no explicit language in the CBA or otherwise "forceful evidence" indicating that the parties intended an exclusion of the grievances from arbitration.

Plaintiff claims the parties' past practice and bargaining history buttress the breadth of the CBA.  See United Steelworkers of America v. Warrior & Gulf Navigation Co., 353 U.S. 574, 581 (1960) (discussing how a collective bargaining  agreement is the result of complex negotiations, and arbitration is a "vehicle by which meaning and content are given to the collective bargaining agreement").  Plaintiff asserts the parties have a course of conduct in arbitrating grievances not specifically listed in Article XII, Section 1.  (Pl. Oppos. Br. at 3.)  The course of conduct is substantial – plaintiff declares it has demanded arbitration in over a thousand grievances that have claimed violations of different CBA provisions not explicitly listed in Article XII.  (Pl. Oppos. Br. at 5; Pl. Reply Br. at 10.)  Plaintiff argues that only in a "mere handful" of these grievances did defendants argue that the listing of Article XI, Section 4 in Article XII, Section 1 was not a vehicle to mandate arbitration of matters involving violations of CBA provisions not listed in Article XII.  Id.

This body of arbitrations includes Verizon New Jersey, Inc., AAA No. 18 300 00084 01, Gr. No. 1-00-281 (Glendon 2002) (Sokol Decl. at Exh. L), which plaintiff relies on to demonstrate that overtime issues are substantively arbitrable.  There, Arbitrator Glendon deemed a violation of past practices and a breach of the implied covenant of good faith and fair dealing were covered by Article II, explicitly rejecting the position that the specific language of Article XII, Section 1 alone determines whether a grievance is arbitrable.  He reasoned that such a narrow and exclusive reading of the CBA would read Article XI, Section 4 right out of Article

10

XII as a source of arbitral jurisdiction, violating the prohibition in Article XII, Section 2 against adding to, subtracting from, or modifying the CBA.  Accordingly, Arbitrator Glendon concluded that Article XI, Section 4 makes at least some matters subject to arbitration, even if it does not clearly specify which matters.  He determined that the arbitrable matters become clear when one examines the introductory clause in Article XI, Section 4 in context with Article XI, Section 3 and the parties' history of arbitrating numerous disputes not specifically listed in Article XII, Section 1.

> As the Union points out, they have arbitrated numerous disputes involving the intent, meaning and/or application of provisions of the agreement that are not specifically listed in Article XII Section 1, and this arbitrator has been the Impartial Chairman in a good many of them.  They have done so, it seems, because they understood the reference in the introductory clause of Article XI Section 4 to "any grievance involving a controversy over the true intent and meaning or the application, in any particular instance, of any provision of this Agreement" to mean that any such grievance is arbitrable if certain conditions are satisfied: namely, that the grievance must have gone through the procedure established in Article XI Sections 1, 2 and 3 without being satisfactorily adjusted; that the Company has submitted a final statement of position on the grievance as required by Section 3; that the Union's written notice of appeal under Section 3 has identified, "by Article and Section, the particular provision(s) of the Agreement at issue"; and that the Union has initiated arbitration proceedings in a timely manner.

Id. at 6-7.

Plaintiff also points to Bell Atlantic - New Jersey, Inc., AAA. No. 18 300 00306 95S, Gr. Nos. 1-95-089, 1-95-061, 1-94-315, 1-94-337 (Anderson 1996) (Sokol Decl. at Exh. R), which involved an alleged violation of Article V and past practices of the CBA because the Company stopped paying for safety shoes.  The grievance proceeded through the grievance procedure as articulated in Article XI, Section 4.  Even though Article V was not listed in Article XII, Section 1, Arbitrator Anderson found the grievance arbitrable because Article XII, Section 1 listed

Article XI, Section 4.

Plaintiff also relies on judicial opinions, including Communications Workers of America v. AT&T Information Systems, Inc., No. 89-8150, 1991 U.S. Dist. LEXIS 12240 (E.D. Pa. 1991).  There, overtime equalization grievances were found arbitrable even though only disputes involving the interpretation of the CBA were explicitly made arbitrable.  Id.  at *28-29.  Relying on provisions involving wage rates, non-discrimination, seniority and working conditions, the court reasoned the grievances were within the "zone of interests" of the CBA.  Id. at *34-35. Plaintiff also refers to a case in this District, General Electric Co. v. Teamsters Local Union No. 676, 718 F. Supp. 400, 404-05 (D.N.J. 1989), which held the disputed grievance was within the "zone of interests" based on related contract provisions.  Plaintiff refers to another case in this District, Local 827, Int'l Brotherhood of Electrical Workers, AFL-CIO v. New Jersey Bell Telephone Company, Civil Action No. 90-1324 (NHP) (Levinson Supplemental Decl., Exh. B), where Judge Politan confirmed an arbitration award in a case involving an overtime grievance in violation of Exhibit I, Section 1.  There, Judge Politan rejected defendants' argument that the court should not confirm the award prospectively.  Id. at 7.  Plaintiff argues that Judge Politan must have interpreted the language of Article XI, Section 4 to encompass violations of CBA provisions not listed in Article XII, Section 1.  (Pl. Oppos. Br. at 10.)  In addition, plaintiff cites Mobil Oil Corp. v. Oil, Chemical & Atomic Workers Int'l Union, 600 F.2d 322, 327 (1st Cir. 1979), a case that found a subcontracting grievance arbitrable because of its alleged violation of the recognition, seniority, and wage and classification provisions.

Focusing on the bargaining history of the parties, plaintiff argues the insertion of Article XI, Section 4 into Article XII, Section 1 in 1986 served to continue the Union's pre-existing right

to arbitrate alleged violations of the CBA not explicitly listed in Article XII, Section 1.  (Pl. Oppos. Br. at 30-31.)  Plaintiff also directs the Court's attention to defendants' unsuccessful attempt in 2003 to modify the grievance provisions (Articles XI and XII), including those related to overtime.  (Pl. Moving Br. at 15.)

Finally, specific to Grievance One (01-00-0120) (involving an alleged violation of a prior settlement agreement), plaintiff contends it is arbitrable pursuant to L.O. Koven & Bro., Inc. v. United Steelworkers of America, 381 F.2d 196 (3d Cir. 1967). (Pl. Moving Br. at 32.)  In that case, the Third Circuit stated that although "interpreting the language of a release is not, strictly speaking, a matter of interpreting the collective bargaining contract," the process "involve[s] an examination of the negotiations and other events regarding the grievance which preceded the execution of the release," a "matter within the arbitrator's submission and to which he is expertly attuned."  Id. at 204.  "Unless a release explicitly discharges the parties from the collective bargaining agreement itself, or from the arbitration provisions thereof, . . . its effect should be determined by an arbitral forum."  Id. at 205.  Plaintiff maintains that the underlying disputes giving rise to the settlement agreement ("Declaration of Emergency Procedures") are arbitrable and defendants have never argued otherwise.  (Pl. Oppos. Br. at 23.)  Furthermore, because the settlement agreement specifically mentions Exhibit I, Section 1 of the CBA, the overtime grievance comes within a past practice, falling within the "zone of interests."

**Defendants' Position**

Defendants' overarching position is that Article XII is narrow, clear, and unambiguously requires them to arbitrate *only* those matters explicitly referenced in Article XII, Section 1, none of which references overtime in general, or the assignment of overtime in particular.  (Def.

Moving Br. at 1 and 16.)   Defendants further contend that plaintiff cited none of the explicit

provisions listed in Article XII, Section 1 during the grievance procedure.  Id.

Defendants maintain that even though Article XI, Section 4 is listed in Article XII,

Section 1, it does not compel arbitration of the overtime grievances because nothing in Article

XI, Section 4 supports plaintiff's argument that *any grievance* processed through the top step of

the grievance procedure about which an Article XI, Section 4 letter has been written is

substantively arbitrable.  (Def. Moving Br. at 24 - 25.)  According to defendants, Article XI,

Section 4 simply sets forth the procedures that are required for purposes of appealing *certain*

*grievances* to the top step of the grievance process (i.e., those grievances that have already

"arisen" to the top step of the grievance procedure).  (Def. Oppos. Br. at 9.)  This is why,

defendants contend, Article XI, Section 1 allows grievances to be presented initially for

adjustment by plaintiff within thirty days after the grievance "arose."  Id.

Contrary to plaintiff's position, defendants claim "the type of dispute that 'arises' under

Article XI, Section 4 is one involving the appropriate scope of a grievance that is submitted to

arbitration" and "[p]ursuant to Article XII, Section 1, this type of dispute is a procedural question

that must be resolved by an arbitrator."  (Def. Oppos. Br. at 10.)

In support, defendants focus on the explicit language of Article XI, Section 3, which

states that after the Company submits its "final statement of position" following the top step

grievance meeting, the case shall be considered closed "unless the grievance is arbitrable and

arbitration proceedings are initiated under the provisions of Article XII."  (Def. Moving Br. at

25.)  The limitations in that language, defendants urge, contemplate that a "grievance is not made

arbitrable simply because it is processed through the top step of the grievance procedure."  (Def.

14

Oppos. Br. at 9.)

In addition, defendants claim that plaintiff's position nullifies the entire arbitration provision because if *any grievance* is arbitrable so long as it goes through the top step of the grievance procedure, the explicit list of what is arbitrable that is set forth in Article XII, Section 1 would be superfluous.  (Def. Moving Br. at 25.)

Defendants disagree that past practices, side agreements, and implied obligations are "provisions" for purposes of the arbitration provision, again relying on the omission from Article XII, Section 1, of any reference to past practices, side agreements or any implied obligations.  Id.

Even accepting plaintiff's position that Article II creates "implied obligations" relating to past practices (including overtime obligations), defendants argue nonetheless that Article II is not listed in Article XII, Section 1.  (Def. Moving Br. at  20.)  And even assuming plaintiff's argument is correct, defendants would only be required to arbitrate those past practices and side agreements relating to the explicit provisions listed in Article XII, Section 1.  (Def. Moving Br. at 20.)

As to Grievance One (01-00-0120), defendants argue the plaintiff cannot rely on the "Declaration of Emergency Procedures" Agreement because the Agreement only applies when an emergency is declared, which never occurred.  In addition, plaintiff did not claim a violation of the "Declaration of Emergency Procedures" Agreement in its top-step appeal letter, as required by Article XI, Section 4.  Furthermore, the Agreement does not contain a provision compelling arbitration.  (Def. Moving Br. at 22-23.)

Defendants maintain that plaintiff's reliance on E.M. Diagnostic is wrong based on Trap Rock Industries, 982 F.2d at 884.  (Def. Oppos. Br. at 2-3.)  The specific language at issue in

<u>Trap Rock</u> was: "[t]he Employer reserves the right, which right shall not be subject to Arbitration, to determine the qualifications of any Employee . . . and if, in the Employer's opinion, the Employee does not meet the qualifications or fails to perform his duties properly, then the Employer can discharge or demote the Employee . . . ." <u>Trap Rock</u>, 982 F.2d at 885. Finding that this arbitration provision was narrowly crafted, the Third Circuit did not apply the "presumption of arbitrability" theory and the "zone of interests" analysis.  The court found that an arbitration clause is "narrow" if it limits arbitration to certain grievances, and is "broad" if it refers to arbitration over "*any* dispute arising out of a claimed violation of [the CBA]." <u>Id.</u> Defendants argue that Article XII is narrow and under <u>Trap Rock</u>, the "zone of interests" and "presumption of arbitrability" arguments fail.

But even applying <u>E.M. Diagnostic</u>, defendants maintain that plaintiff's position is without merit because the underlying grievances are not covered by any "provisions" explicitly made subject to arbitration.  (Def. Oppos. Br. at 4-5.)  Defendants emphasize that although plaintiff is asserting these overtime grievances involve violations of Article II, IV, V and/or Exhibit 1 of the CBA, none of these provisions is listed in Article XII, Section 1, <u>id.</u>, and none of these provisions specifies how the Company should assign overtime work.  (Def. Moving Br. at 17.)

Like plaintiff, defendants point to the parties' bargaining history, but for a different proposition.  They argue that the bargaining history led to the Accounting Contract, which was negotiated and signed by the parties at the same time as the applicable Plant Contract.  <u>Id.</u>  In the Accounting Contract appears explicit language requiring the Company to arbitrate grievances processed through the top step of the grievance procedure.

16

> Either party may at its option *require* that any grievance which involves the interpretation or application of this Agreement and *which is not [satisfactorily] adjusted under the provisions of Article XI, Grievance Procedure, shall be submitted to arbitration . . . after the procedures provided for in Article XI, Grievance Procedure, have been exhausted.*

(Beck Decl. at Exh. F) (emphasis added).

According to defendants, to interpret the two contracts the same way despite the different language in each, is absurd.  Plaintiff disagrees, arguing that the Accounting Contract is a "separate CBA covering a separate bargaining unit with a separate bargaining history," and there was no need to add Article XI, Section 4 to the Accounting Contract since all grievances processed through the top step of the grievance procedure were already arbitrable.  (Pl. Reply Br. at 8.)

Defendants also contend that plaintiff has repeatedly and unsuccessfully tried to add CBA language to require defendants to equalize overtime and/or utilize overtime lists.  (Def. Moving Br. at 17.)  Defendants argue the present matter is just another attempt by plaintiff to amend the CBA, in violation of Article XII's prohibition against an arbitrator adding to, subtracting from, or modifying any provision of the CBA.  Id. at 18 (citing Lodge 802 v. Pennsylvania Shipbuilding Co., 835 F.2d 1045, 1046-47 (3d Cir. 1987) (holding that a dispute was not arbitrable because it would violate the CBA provision prohibiting an arbitrator from adding new terms and conditions to the CBA)).

Defendants argue that just because they voluntarily agreed to arbitrate certain grievances in the past, they should not be compelled to arbitrate the three overtime grievances involved in this dispute.  (Def. Moving Br. at 20 n.7.)  Moreover, defendants point out that on numerous occasions, plaintiff did not demand arbitration of grievances processed through the top step of the

17

grievance procedure.

Defendants point to cases in the body of arbitration decisions involving the parties that have held that violations of provisions not specifically stated in Article XII, Section 1 are *not* substantively arbitrable.  (Def. Oppos. Br. at 16-17.)  In IBEW Local 827, AAA. No. 18 30 0043 90S (Howard 1992) (Beck. Decl. at Exh. W), plaintiff had argued that the arbitration provision mandated that the Company arbitrate any grievance processed through the top step of the grievance procedure.  Arbitrator Howard rejected this, reasoning that Article XI, Section 4 sets forth the procedure for advancing a grievance to the top step of the grievance procedure and does not mandate arbitrability of the grievance.  In addition, Arbitrator Howard noted it is not unusual for a grievance procedure to cover more subjects than the scope of arbitration.

Another arbitration case relied on by defendants is Verizon New Jersey, Inc., AAA No. 18-300-00754-97, Gr. Nos. 1-97-586, 1-01-146, 1-99-130 (Anderson 2002).  There, Arbitrator Anderson held that pursuant to Article XII, overtime grievances were not substantively arbitrable, noting  that the Union's failure to achieve equalization of overtime language during past negotiations was a strong indication that the grievances were not arbitrable.  Plaintiff argues this decision was not based on the placement of Article XI, Section 4 in Article XII, Section 1.[6] (Pl. Oppos. Br. at 24.)

**Court's Holding**

---

[6] Third Circuit precedent has held that arbitration decisions are neither binding nor preclusive on other arbitrators' decisions, even if the contract interpretation issues are identical. See General Committee of Adjustment, United Transportation Union, 893 F.2d 584, 593 n.10 (3d Cir. 1990) (citing Butler Armco Indep. Union v. Armco, Inc., 701 F.2d 253, 255 (3d Cir. 1983) ("absent contractual language to the contrary, one arbitrator's interpretation of a collective bargaining agreement is not binding on a subsequent arbitrator")).

The arbitration provision contained in the CBA unambiguously requires defendants to arbitrate only those matters explicitly referenced in Article XII, Section 1.  Although none of the matters listed in the arbitration provision references overtime in general, or the assignment of overtime in particular, the existence of Article XI, Grievance Procedure, Section 4 in the Arbitration Article cannot be ignored.  The parties disagree about how to interpret Article XI, Section 4, which deals with grieved matters, as one of those items the CBA specifies as arbitrable.  The fight between the parties comes down to whether some grieved matters or all grieved matters are arbitrable, and if some grieved matters are arbitrable, which ones.

Applying this to the grievances in question, the parties do not dispute that it is for this Court, not the arbitrator, to decide arbitrability.  In making its decision, particularly here, where the operable language is subject to thoughtful interpretations that go in different directions (for example, the dueling analyses by the arbitrators cited by the parties in support of their dueling positions), the Court finds critical guidance in basic legal principles.  A guiding principle of the law of arbitration in this Circuit and elsewhere, is that when an arbitration clause exists, "a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," with doubts being resolved in favor of coverage.  Lukens Steel Co., 989 F.2d at 672 (quoting AT&T Technologies, 475 U.S. at 650).  Accordingly, defendants need to show there is an express provision excluding the grievances from arbitration, or provide "forceful evidence" to exclude the grievances from arbitration.  Lukens Steel Co., 989 F.2d at 673.  The Court finds that they haven't.

To begin with, the Court will not do violence to the plain language of Article XII, Section

1 by reading Article XI, Section 4 right out of Article XII as a source of arbitral jurisdiction. This occurs if one accepts defendants' argument that arbitration is limited to those items enumerated in Article XII, Section 1.  Adopting that approach would also violate Article XII, Section 2's prohibition against adding to, subtracting from, or modifying the CBA.  That said, the Court need not find, for purposes of resolving these motions, that the CBA sweeps everything into arbitration.  What the CBA does is provide that arbitration may be had in those matters explicitly referenced in Article XII, Section 1, which contains, in full, what Article IX, Section 4 says and does.

For ease of reference here, the language of Article XI, Section 4 is as follows:

**Section 4.  If any grievance involving a controversy over the true intent and meaning or the application, in any particular instance, of any provision of this Agreement, is not satisfactorily adjusted under the provisions of Sections 1 and 2 above, the Union's written notice to the Director-Labor Relations appealing the grievance specified in Section 3 above shall identify, by Article and Section, the particular provision(s) of the Agreement at issue.**

And Section 3 provides:

**Section 3.  If the grievance is not satisfactorily adjusted under the provisions of Sections 1 and 2 above, the Union may appeal the grievance by written notice, which notice shall set forth the Union's position with respect to such grievance, to the Director-Labor Relations designated by the Company within fourteen (14) days after discussions have been concluded under Section 2 above.  Conferences shall be held promptly between the Union and the Company representatives, or such other representatives as either party may select, in a further effort to reach a satisfactory adjustment of the grievance.  Fourteen (14) days shall be allowed for adjustment of the grievance at this level.  If a satisfactory adjustment is not reached, the Company, within fourteen (14) days after discussion have been concluded at this level, shall submit to the Union in writing a final statement of its position.  The case shall then be considered closed unless the grievance is arbitrable and arbitration proceedings are initiated under the provisions of Article XII, Arbitration, within thirty (30) days after the period allowed for adjustment at this level.**

Article XI, Section 3 language specifies that at a given point in the grievance procedure "the case shall . . . be considered closed unless the grievance is arbitrable. . ."  –  indicating that there may be grievances that are not arbitrable.  But the Court finds that defendants' interpretation that a claim arising under Article XI, Section 4 only deals with the appropriate scope of a grievance submitted to arbitration, amounts to a tortured reading of the pertinent language.  Article XI, Section 4 does more than simply set forth the procedures that must be taken to appeal certain grievances to the top step of the grievance process; it indicates what types of disputes can go up the ladder and the inclusion of entire Section 4 of Article XI in Article XII, Section 1 perforce includes the substance of the grievances referenced in Section 4, described as a "controversy over the true intent and meaning or application" of the Agreement.  The Court interprets this language as a reason to reject defendant's contention that only scope and not substance is involved and also a reason to reject plaintiff's position that any and all grievances are arbitrable, even those not arising out of a "controversy over the true intent and meaning or application" of the Agreement.

The Court also disagrees with defendants' contention that Section 4 language limits arbitrable grieved items to provisions of Article XII, Section 1.  The specific language defendants rely on for this proposition is:  "If any grievance involving a controversy over the true intent and meaning or the application, in any particular instance, of any *provision* of this Agreement, is not satisfactorily adjusted . . . ."  The Court is not persuaded that arbitrable grievances are limited to alleged violations of the "provisions" listed in Article XII, Section 1.  The language in Article XI, Section 4 is explicit: it states "any provision of this Agreement," not "any provision listed in Article XII, Section 1."

21

Defendants make a facially logical argument that the language in Section 3, particularly the last sentence, appears to make a distinction between arbitrable and not-arbitrable grievances. So they argue that the CBA  contemplates that a grievance is arbitrable only if relates to one of the express items listed in Article XII, Section 1.  Notwithstanding some surface appeal, the Court disagrees with defendants and finds that if a dispute arises over an item not specifically listed in Article XII, Section 1, the grievance can *still* be arbitrable, assuming predicate requirements in Section 3 *and Section 4* are met.  From Section 3, the predicate requirements are that the grievance has gone through the grievance procedure set forth in Article XI without being satisfactorily adjusted; defendants have submitted a final statement of position on the grievance as required by Section 3; plaintiff's written notice of appeal under Section 3 has identified, "by Article and Section, the particular provision(s) of the Agreement at issue"; and plaintiff has initiated arbitration proceedings in a timely manner.  The predicate requirement in Section 4 that must be met is that the grievance involves "a controversy over the true intent and meaning or the application, in any particular instance, of any provision of this Agreement."

The Court interprets the CBA this way because it is unambiguous about the interrelationship between and among Article IX, Sections 3 and 4 and Article XII, Sections 1 and 2.  The language of Section 3 and Section 4 of Article XI, is in essence describing a *process*, the Grievance Procedure.  Nonetheless, Section 3 contains reference to substantive provisions, the ones that the Union identifies on appeal and upon which the Company sets forth its final position as the final step in the grievance process.  The Court reads the language of Section 3 and Section 4 of Article XI, in conjunction with the language of Section 1 of Article XII, as permitting arbitration of those provisions the Union identifies in a notice of appeal after completion of the

22

grievance process, as to which the Company has set forth its final position.  Recognizing it is not illogical to engraft onto this category a significant limitation  – as defendants argue the Court must –  that would reduce arbitrable provisions to those set forth in Article XII, Section 1, the Court simply cannot read Article XII, Section 1, including as it does the full measure of Article XI, Section 4, as defeating the breadth of matters that Section 4 says the Union may grieve up the ladder:  *grievances involving a controversy over the true intent and meaning or the application, in any particular instance, of any provision of this Agreement*.  To so truncate arbitrable grievances runs contrary to the broad and consistent principles of arbitration discussed above, where there is a lack of "forceful evidence" that such a startling limitation exists.  It also runs contrary to the directions of the Supreme Court that the Third Circuit emphasized in Lukens: when an arbitration clause exists, "a particular grievance should not be denied unless it may be said *with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute*." Lukens Steel Co., 989 F.2d at 672 (quoting AT&T Technologies, 475 U.S. at 650) (emphasis added).  Where reasonable minds can disagree, there cannot logically be found the "positive assurance" required in the analysis.  Where the disagreement can thoughtfully go both ways, again, the language is genuinely susceptible of an assertion that covers the asserted dispute, and doubts must be resolved in favor of arbitration.  Id.

Because the Court believes that the strong presumption of arbitrability must tip the balance here, the Court interprets this group of provisions, Article XI, Sections 3 and 4, and Article XII, Section 1, which contain internal references to one another and thus must be read in conjunction with one another, as defining grieved matters that the Union can bring into arbitration to be those grievances that involve a controversy over the true intent and meaning or

23

the application, in any particular instance, of any provision of the CBA, which have been processed through the steps set forth in Article XI, Section 3.

Applying this conclusion to the overtime grievances that plaintiff seeks to arbitrate: Did they go through the grievance procedure?

No one disputes that the three overtime grievances were processed through the grievance procedure set forth in Article XI.  In addition, defendants submitted a final statement of position as to each grievance and plaintiff submitted a timely written notice of appeal as to each grievance and identified the particular provisions at issue.  During the grievance procedure, plaintiff alleged violations of Article II (Recognition and Collective Bargaining), the implied covenant of good faith and fair dealing, and past practices of the CBA.  After the company set forth its final position on the overtime issues in each grievance, which was contrary to plaintiff's position, plaintiff filed appeals on the basis that the company's overtime practices violated Article II of the CBA, the implied covenant of good faith and fair dealing, and past practices.  Section 3 predicates, then, are met.

Are the matters identified by plaintiff on appeal covered by Article XI, Section 4? Plaintiff argues that substantively, the overtime grievances meet the requirements of Section 4, and the Court agrees.  Regarding Article II, which is clearly "a provision" of the CBA,  plaintiff essentially argues that the overtime lists as past practices are "conditions of employment" that defendants are obligated to bargain collectively with the represented employees' sole collective bargaining agent.  (Pl. Moving Br. at 32.)  By changing or eliminating the past practice of the overtime lists without first notifying and bargaining with plaintiff, defendants violated Article II. (Pl. Oppos. Br. at 15.)  In support, plaintiff cites New Jersey Bell Telephone Company, AAA No.

24

18 300 00209 91S, Gr. No. 1-1-098 (Anderson 1994) (Sokol Decl. at Exh. P), in which the discontinuation of service anniversary luncheons violated the Recognition Clause because the Company unilaterally abolished the luncheons.

The Court finds that plaintiff has demonstrated a sufficient "controversy" over the "application" of Article II, which is a provision of the CBA, to permit characterization of the overtime grievances as those identified in Article XI, Section 4.  Plaintiff also argues that the overtime list has become a past practice between the parties and has become an implied term of the CBA.  Although the Court's focus on Article II is sufficient to find that the three grievances are substantively arbitrable, the Court agrees with plaintiff that the "zone of interests" analysis in Lukens is applicable here, and provides an additional basis for finding that these overtime grievances to be arbitrable.  This is particularly so given the breadth of Section 4 language permitting grievances involving "the true intent and meaning  *or the application, in any particular instance, of any provision* of this Agreement."

## V.   CONCLUSION

For the foregoing reasons, the Court finds the three grievances are substantively arbitrable.  Accordingly, the Court grants summary judgment in favor of plaintiff and denies defendants' motion for summary judgment.  An appropriate Order will be entered.


Dated:  June 29, 2005                                  s/ Katharine S. Hayden

                                                       Katharine S. Hayden, U.S.D.J.